UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| HERMAN FULWILEY, and LEO WILLIAMS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO.: 2:13-CV-4-TLS |
|  | ) |  |
| HADADY CORPORATION, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**OPINION AND ORDER**

The Plaintiffs, Herman Fulwiley and Leo Williams, are pursuing claims against Hadady Corporation under the Age Discrimination in Employment Act (the ADEA). The Plaintiffs claim that the Defendant's failure to offer them employment in 2012 was due to their age—Fulwiley was 60 years old and Williams was 56. The Defendant has moved for summary judgment, asserting that it is undisputed that reasons unrelated to the Plaintiffs' ages motivated its decision. For the reasons set forth in this Opinion and Order, the Court finds that no reasonable jury could find that the Defendant discriminated against the Plaintiffs on the basis of their age. The Court will enter judgment in favor of the Defendant.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the nonmoving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court

should only deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. [A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

## FACTUAL BACKGROUND

**A.    The Defendant's Hiring Practices**

The Defendant manufactures and distributes steel fabrications and parts for locomotives and railcars. The Defendant's workforce is generally divided between professional staff consisting of engineers and managers, and support staff made up of production floor employees. Jane Sullivan is the Defendant's President. Before becoming President, she served in other capacities, including as the Defendant's Human Resources Manager.

The Defendant hires employees directly and through temporary staffing agencies. However, all job applications must be completed at one of the Defendant's facilities. An

employee in the human resources department, either April Szablewski or Rose Umlauf, provides a job application form to the requesting individual and explains that the application must be completed on-site and returned to Szablewski or Umlauf. Applications are retained for one year, but considered active for 30 days, meaning that the Defendant only considers applications submitted within the prior 30 days when filling open positions.

After Szablewski or Umlauf initially review a submitted application for completeness, they may talk to the applicant. This initial "interview" examines employment gaps, tenure, reasons for leaving, performance, attendance, and transportation. If an applicant completes the initial interview, Szablewski or Umlauf will review the results of the interview with Sullivan. When time does not allow for this short interview, the applicant is informed that all applications go through a review process and that someone from Human Resources will contact him or her if the Company has a position that it deems a good fit. Szableski, who is a Human Resources Generalist, does not have authority to extend a job offer without consulting with either Umlauf, a Human Resources Supervisor, or Sullivan. In almost all instances, Sullivan is involved in the hiring decision.

Since 2014, the Defendant has kept a record of every application it has received. Before 2014, the Defendant kept an EEO application log, but it only listed the people who submitted an application but were not hired. For example, the EEO Application Log from 2012 tracks the date, name, and referral source for each unsuccessful applicant.

**B.     The Two-Week Notice Requirement**

According to Sullivan, the Defendant does not generally rehire employees who resigned

from the company because there is a greater likelihood that these employees will separate from their employment again. The Defendant has a written resignation policy that requires a resigning employee to provide at least two weeks' advance notice of his intent to resign. The Defendant has a practice, but not a written policy, of prohibiting the rehire of employees who resigned without providing such notice. To that end, the Defendant keeps a record of whether an employee is considered ineligible for rehire upon separation from employment. Since 2009, the Defendant has designated 47 employees as ineligible for rehire based on their failure to provide two weeks' notice. Of these 47, 7 reapplied for employment, including Plaintiff Fulwiley. Three of the 7 were rehired and 4 were not. Of the 4 not selected for rehire, only the Plaintiff was over 40 years old; the others were 27, 23, and 19. Of the 3 hired, 1 was over 40 years old.

One of the 3 that the Defendant rehired, Brandon Merriweather, had resigned because he was being harassed and threatened by a follow coworker, who was also a family member. Although the Defendant offered to take action to deal with Merriweather's concerns and resolve the problem, he opted to resign instead. Merriweather was rehired at the age of 24 because Sullivan was personally aware of the special circumstances that existed at the time of his resignation. The Defendant also rehired Felipe Fonseca. He personally pleaded with Sullivan to be rehired due to his desperate financial situation. He was 58 years old when the Defendant rehired him. The circumstances of the third hire, which occurred in 2010, are not explained by the parties.

### C. Plaintiff Fulwiley's 2008 Employment and Resignation

In July 2008, Fulwiley applied to be a machine/fork lift operator for the Defendant. In August 2008, the Defendant hired him as a temporary worker through Davis Staffing. On September 12, 2008, having worked for about six weeks for the Defendant, Fulwiley informed the Defendant that he was resigning his assignment. Fulwiley maintains that he continued to work for two weeks following his notice. On his last day of employment, he talked to Sullivan and she told him he could always come back to work for the Defendant.

According to the Defendant's records, Fulwiley did not report for work or call in to report his absence for the next three days after announcing his intention to resign. Consistent with the Defendant's attendance policy, the Defendant terminated Fulwiley's assignment to the Company after he did not return to the Company for three consecutive working days. Davis Staffing's records reflect that on September 18, 2008, a Davis Staffing employee entered a note in Fulwiley's file stating that he was a "no call no show" (aka "ncns") on September 15, 2008, and his last day worked (aka "ldw") was on September 12, 2008. (Def.'s Ex. G, ECF No. 75-8.) Davis Staffing issued Fulwiley his final paycheck on September 19, 2008.

The Defendant designated Fulwiley as "ineligible for rehire" due to his failure to complete his two-week resignation period. Davis Staffing also designated Fulwiley as ineligible for rehire due to his failure to give appropriate notice of his resignation.

### D. Plaintiff Williams's 2008 Employment

In August 2008, Williams applied for and obtained a position through Sedona Staffing. Two months later, the Defendant hired Williams as its own full-time employee. In December

2008, Williams was laid off as part of a large scale reduction in force brought about by the recessing economy.

E.      **Plaintiff Fulwiley's Application for Employment in 2012**

On May 2, 2012, Fulwiley came to the Defendant's facility, along with Williams and a third individual, Edward Floyd, indicating that they were looking for employment. Szablewski provided Fulwiley with a job application and explained the Defendant's general application process, including that if the Company had an available position that would be a good fit for him, someone from Human Resources would contact him. Fulwiley told Szablewski that he previously worked at the Defendant company. Szablewski took Fulwiley's completed application and informed him it would be under advisement and proceed through the general review process.

Sullivan reviewed Fulwiley's application that same day. As part of her review, Sullivan looked back at the personnel records from Fulwiley's prior assignment at the company. Comparing Fulwiley's 2008 and 2012 applications, Sullivan realized that the pre-August 2008 work histories did not match. Specifically, Fulwiley listed a job on his 2012 application that he had not listed on his 2008 application. This was the job he held immediately prior to his 2008 assignment with the Defendant. By not disclosing the position, Fulwiley had also failed to inform the Defendant that he was eligible for recall to his previous employment. Sullivan believed that Fulwiley intentionally omitted that information in 2008 so that the Defendant would not be aware that he was subject to recall by his previous employer, and thus might leave his position with the Defendant within a short time. Sullivan also observed that Fulwiley had been marked as ineligible for rehire in the Defendant's human resources system due to his failure

to complete his two-week resignation period in 2008. Sullivan instructed Szablewski that Fulwiley would not be rehired because he left without providing two weeks' notice and because there was an inconsistency between his 2008 and 2012 applications.

After Fulwiley, Williams, and Floyd completed their applications and left, the Defendant called Floyd to ask if he would submit to a physical because he was being offered a position. Fulwiley drove Floyd back to the facility.

Later, when Fulwiley did not hear back from the Defendant regarding a position, he returned to the facility to check on his application. He maintains that during a second follow-up visit to the facility, he inquired again whether Sullivan had reviewed his application. Fulwiley testified that Szablewski "said, No, but then she replied—she said, Oh Herman, I think it's your age." (Fulwiley Dep. 51, ECF No. 78-2.)[1] Williams testified that he was with Fulwiley when Szablewski made an age-related comment. He stated that she made the comment when he came to the facility with Fulwiley and Floyd to apply for employment. "[T]hey told him that we was—I think they're going another way, you're too old, or something like that." (Williams Dep. 62, ECF No. 75-9; *see also id.* at 67 ("They told me they're going another way—they're going another way, a way with younger people, and they said they weren't hiring."); *id.* at 70 ("Then the lady said that we are starting a new thing . . . and they're not dealing with older individuals. They're dealing with younger individuals.").)

Szablewski denies that she made the statement, or that she even informed Fulwiley that the Defendant was not going to offer him a position.

---

[1] Later in his deposition, Fulwiley stated that Szablewski made the comment when he returned to the facility so that Floyd could receive forms for the physical.

7

F.    **Plaintiff Williams's Application for Employment in 2012**

The Defendant's EEO Application log shows that it received applications from five applicants on May 2, 2012: Fulwiley, Floyd, Eric Tinoco, Claude Clark, and David Austin. Sullivan reviewed the applications of all five of these individuals on May 2, 2012. She does not recall receiving or reviewing a job application from Williams. Sullivan did not talk to Williams about his interest in employment on May 2, 2012. The EEO Application Log does not list Williams as submitting an application on May 2, 2012, or at any other date in 2012.

Williams provided the following testimony regarding his application:

Q.   Do you know if you filled out an application in 2012?
A.   Yeah, I believe I did. I'm not sure now, Miss. I'm not sure.
Q.   So if I told you Hadady didn't have an application for you, would you be surprised by that?
A.   Yeah, I would.
Q.   Even though you don't remember whether you filled one out or not?
A.   Yeah, because I believe I did fill one out. I really do believe that. I'm not sure now, because I was already hired in before they laid me off.
Q.   Is it possible that you didn't fill one out because you figured you had already been hired once before?
A.   That's possible.

(Williams Dep. 68–69, ECF No. 75-9.)


**ANALYSIS**

A plaintiff suing under the ADEA may establish discrimination directly or indirectly, the latter through the approach used in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003). "[W]hether a plaintiff proceeds under the direct or indirect method of proof, the ultimate standard is the same: the plaintiff must demonstrate that the employer would not have made the adverse employment decision in

question but for his membership in a protected class." *Cerutti*, 349 F.3d at 1061–62; *see also Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009) (holding that in ADEA disparate treatment cases, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision").

**A.     Direct Method**

"A plaintiff proceeding under the direct method survives summary judgment by creating triable issues as to whether discrimination motivated the adverse employment action." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Under the direct method, a plaintiff can establish discriminatory intent by relying on direct or circumstantial evidence that "the decisionmaker" acted for a prohibited reason. *Rogers v. City of Chi.*, 320 F.3d 748, 753–54 (7th Cir. 2003); *see also Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) ("The focus of the direct method of proof . . . is not whether the evidence offered is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action"). Relevant circumstantial evidence includes suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other facts from which a jury can infer discriminatory intent. *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009).

The Plaintiffs submit that Szablewski's statement is direct evidence that their age was the basis for the Defendant's hiring decision. For purposes of summary judgment, the Court assumes that Szablewski made the statement, even though she adamantly denies it. Generally speaking, however, "comments by a non-decision maker do not suffice as evidence of discriminatory

9

intent." *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 730 (7th Cir. 2004). Remarks can raise an inference of discrimination when they are made (1) by the decision-maker, (2) around the time of the decision, and (3) in reference to the adverse employment action. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, — F.3d —, No. 14-3201, 2016 WL 304043, at *11 (7th Cir. Jan. 26, 2016). Alternatively, "[c]at's paw liability may be imposed on an employer where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action." *Bordelon v. Bd. of Educ. of the City of Chi.*, — F.3d —, No. 14-3240, 2016 WL 411026, at *6 (7th Cir. Feb. 3, 2016) (alterations and emphasis omitted).

Szablewski was not the decision-maker. The Plaintiffs do not dispute this, or contend that Szablewski harbored discriminatory animus and provided Sullivan with factual input or other information that impacted Sullivan's decision. Rather, they assert that Szablewski's remark is evidence of discrimination because Szablewski was relaying a message from the decision-maker, Sullivan. The Plaintiffs rely on *Makowski v. SmithAmundson LLC*, 662 F.3d 818 (7th Cir. 2008), to argue that Szablewski was sufficiently involved in the employment decision so as to make her account of her supervisor's decision a binding admission of the Defendant. *Makowski* dealt with the admissibility of a statement under Federal Rule of Evidence 801(d)(2)(D), which excludes from the definition of hearsay a statement offered against an opposing party that "was made by the party's agent or employee on a matter within the scope of that relationship." The *Makowski* court determined that the statement of a human resources director about the reasons behind an employment decision was not hearsay because she was involved in the decisionmaking process affecting the employment action. 662 F.3d at 823. Specifically, her

10

duties included regular consultations regarding decisions to eliminate positions and terminate employees to ensure compliance with federal anti-discrimination laws, making her a part of the firing process. *Id.* In addition, she was asked to confer with outside labor and employment counsel regarding the decision to terminate the employee. *Id.*

*Makowski* is not applicable to the facts of this case. In the statement that Fulwiley attributes to Szablewski, she does not say that she is relaying the results of Sullivan's decision. Rather, she indicates that Sullivan did not even look at the applications yet, and then appears to suddenly surmise that it might be because of Fulwiley's age. Although in Williams's version, Szablewski appears to be speaking about a collective decision. But even if Szablewski were reciting an account of Sullivan's decision-making, the situation is distinguishable from *Makowski* because the undisputed record shows that Szablewski's involvement in the Plaintiffs' application process was limited to providing them with blank applications, collecting Fulwiley's completed application and giving it to Sullivan, and receiving direction from Sullivan that Fulwiley would not be rehired because he left without two weeks' notice and he had an inconsistency between his 2008 and 2012 applications. As such, her duties did not affect the decision-making process. *See Makowski*, 662 F.3d at 823 (stating that the employee was "involved in the decisionmaking process leading up to" the termination); *see also Bordelon*, — F.3d —, 2016 WL 411026, at *6 (noting that an employee's statements are not admissible under Rule 801(d)(2)(D) unless her duties "encompass some responsibility related to 'the decisionmaking process affecting the employment action'") (quoting *Stephens v. Erickson*, 569 F.3d 779, 793 (7th Cir. 2009)). Because Szablewski's duties did not encompass decisionmaking responsibility, she was not speaking within the scope of her employment. Accordingly, her

11

statement is not admissible evidence of the Defendant's, i.e., the decision maker's, motivation.

The Plaintiffs assert that Szablewski's comment, in addition to being a direct admission, is circumstantial evidence of discrimination under the direct method. The Plaintiffs compare their case to *Volovsek v. Wisconsin Department of Agriculture, Trade and Consumer Protection*, 344 F.3d 680 (7th Cir. 2003). In that case, the plaintiff overheard two of her supervisors comment about "keeping them barefoot and pregnant" immediately after they told her she was being denied a promotion. 344 F.3d at 690. In equating their case to *Volvosek*, the Plaintiffs completely overlook the fact that Szablewski was not the decision maker. To prevail on their age discrimination claim, the Plaintiffs have "to provide direct or circumstantial evidence that the *decisionmaker* has acted for a prohibited reason. A decisionmaker is the person responsible for the contested decision." *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 378–79 (7th Cir. 2011) (quotation marks omitted). The Plaintiffs have not presented evidence that Sullivan, or anyone who had an affect on or was involved in the decisionmaking process, made a comment regarding their ages.

Neither do the Plaintiffs have any other evidence, direct or circumstantial, from which a rational jury could determine that the Plaintiffs' ages were the determining factor in the Defendant's decision not to offer them employment. The Defendant made offers of employment to two of the five applicants who submitted applications on May 2, 2012. One of them, Claude Clark, was 57 years old. Neither of them had been marked as ineligible for rehire in the Defendant's HR system. To counter, the Plaintiffs challenge aspects of the Defendant's hiring procedures and its explanations as being a pretext for discrimination. For reasons discussed below, these arguments fall short of supporting an inference of discrimination.

"Pretext means a dishonest explanation, a lie rather than an oddity or an error. Pretext is more than a mistake on the part of the employer; it is a phony excuse. Showing pretext requires proof that the defendant's explanation is unworthy of credence." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (citations, alterations, and quotation marks omitted); *see also Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000) (stating that even if an employer's reason for terminating an employee is "mistaken, ill considered or foolish," pretext has not been shown as long as the employer "honestly believed those reasons"). It is undisputed that the Defendant's practice is to designate employees who do not complete their two weeks' notice period as "ineligible for rehire." Since 2009, the Defendant has marked 47 former employees ineligible for rehire. Fulwiley asserts that he provided adequate notice, and thus disputes that he should have been marked as ineligible. However, none of the evidence suggests that Sullivan did not believe that Fulwiley had been properly designated as ineligible for rehire in the Defendant's system. Nor is there evidence to suggest that there was no basis in fact for this belief. Sullivan saw the notation when she reviewed Fulwiley's personnel file in 2012. While Fulwiley may dispute the accuracy of the Defendant's records based on his own recollection of the circumstances surround his resignation, he has no evidence to show that Sullivan did not honestly trust the accuracy of these records.[2]

Fulwiley argues that other employees were rehired despite failing to provide two weeks' notice prior to their resignation, thus asserting that the reason was insufficient to motivate the

---

[2] Davis Staffing's records correlated with the Defendant's records regarding the timing of Fulwiley's departure. Fulwiley argues that the timing of the Defendant's verification of his records with Davis Staffing shows pretext, as the Defendant did not confirm these dates until later. This timing does not suggest pretext, as Sullivan did not rely on Davis Staffing's records, but on her own company's records as she viewed them on May 2, 2012.

13

Defendant's decision not to hire him. However, the record demonstrates that the Defendant consistently applied its rehiring practice, and that exceptions were limited. On one occasion when the Defendant rehired an employee considered ineligible for rehire, Sullivan was personally made aware of an extenuating circumstance that she believed excused the individual's failure to complete the resignation period. In another situation, the employee convinced Sullivan to rehire him because he was under extreme financial strain. The Plaintiff did not make any personal appeal to Sullivan regarding extenuating circumstance. Thus, even though exceptions were occasionally made, the Plaintiff has not presented any evidence that the Defendant should have considered one for him, especially after Sullivan compared Plaintiff Fulwiley's 2008 and 2012 applications and discovered a discrepancy. He does not even suggest what his personal appeal might have been.

The Plaintiffs attempt to raise an issue of pretext with respect to Williams by asserting that a genuine issue of material fact exists as to whether Williams completed an application in 2012. In support, Williams cites his deposition testimony that he would be surprised if he did not submit an application. Williams also notes that, because the Defendant did not deviate from its normal document retention policy, the application would not have been found during discovery even if Williams had submitted one; and since he is entitled to all have all reasonable inference and disputes of fact viewed in his favor, there is a genuine issue of material fact. In reality, Williams was less than certain about whether he completed and turned in an application in 2012. He testified that he believed he did, but that he was not sure. He admitted that it was possible that he did not because he had previously worked for the Defendant.

On the other side, it remains undisputed that the Defendant's 2012 EEO log does not

include Williams's name, and that neither Szablewski nor Sullivan reviewed an application for Williams. Because the Defendant has carried its burden under Rule 56 to show that Williams did not submit an application, Williams must do more than simply show that there is some metaphysical doubt as to the material facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). "[B]efore a non-movant can benefit from a favorable view of the evidence, it must show that there is some genuine evidentiary dispute. 'Genuine,' in this context, means 'reasonably contestable.'" *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009) (quoting *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. As for document retention, the Plaintiffs have not pointed to a single pertinent document that was destroyed or that the Defendant failed to produce. It is pure speculation to assert, then, that Williams's application, if it indeed existed, was the sole exception. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (stating that the court does not draw inferences that are supported by "only speculation and conjecture").

In any event, "[t]he only concern in reviewing an employer's reasons for [an employment action] is the honesty of the employer's belief." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 323 (7th Cir. 2003), and the Plaintiffs have not established that the Defendant did not genuinely believe that Williams failed to make it aware that he was seeking a position in 2012. Likewise, it is immaterial to the pretext analysis that two other employees hired by the Defendant were not required to submit job applications because the record is undisputed

15

that these employees personally spoke with Sullivan to request that they be rehired, and that Plaintiff Williams never spoke with Sullivan to request rehire.

When the Plaintiffs' factual assertions, construed in their favor, are considered together, there is not enough evidence from which a reasonable jury could infer that the Plaintiffs' ages were the but-for cause for the Defendant's decision not to extend offers of employment.

**B.      Indirect Method**

The Plaintiffs have not shown that similarly-situated younger applicants were treated more favorably, a necessary element of a prima facie case of discrimination under the indirect method. *See Hutt v AbbiVie Prods. LLC*, 757 F.3d 687, 693 (7th Cir. 2014). Fulwiley asserts that the appropriate comparator to him was Floyd, the substantially younger applicant the Defendant offered employment to in May 2012. However, it is undisputed that Floyd had not previously worked for or resigned from the Defendant, and he certainly was not marked as ineligible for rehire in the Defendant's system. This is a material, differentiating distinction. *See Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 512 (7th Cir. 2012) (noting that while comparators need not be identical, the distinctions between the plaintiff and her would-be comparators were material because they went to heart of why the plaintiff received different treatment); *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012) (stating that plaintiff must usually show that comparator "engaged in similar conduct without such differentiating of mitigating circumstances as would distinguish . . . the employer's treatment of them"). Thus, Floyd was not comparable to Fulwiley, and the selection of Floyd over Fulwiley does not support an inference that age was a determining factor. *See Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675–76 (7th Cir. 2012)

(emphasizing that similarly situated employee must be similar in all material respects to suggest that the plaintiff was singled out for discriminatory reason).

Williams has not identified any other applicant for whom Sullivan did not review a written employment application or speak to directly regarding their interest in employment. This places him in a category all by himself. "[W]ithout similarly situated comparators, no inference of discrimination arises and [the Plaintiffs'] disparate treatment claims fail under the indirect method." *Chaib v. Indiana*, 744 F.3d 974, 984 (7th Cir. 2014).

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 74]. The Clerk will enter judgment in favor of the Defendant and against the Plaintiffs.

SO ORDERED on March 2, 2016.

                                             s/ Theresa L. Springmann
                                            THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT
                                            FORT WAYNE DIVISION